# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

LOCAL INTEREST, LLC,

          Plaintiff,

    v.

COSTCO WHOLESALE CORPORATION,

          Defendant.

Civil Action No. 2:26-cv-00265

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Local Interest, LLC ("Local Interest" or "Plaintiff") files this Complaint against Costco Wholesale Corporation ("Costco" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action for Defendant's infringement of the following United States Patents (the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| U.S. Patent No. | Available At |
|---|---|
| 1)  7,532,899 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7532899 |
| 2)  8,774,834 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8774834 |

2. Local Interest seeks injunctive relief and monetary damages.

## PARTIES

3. Local Interest is a limited liability company formed under the laws of Texas with a registered office address located at 512 W. Martin Luther King Jr. Blvd., Unit 281, Austin, TX,

78701 (Travis County).

4. Defendant Costco Wholesale Corporation is a corporation organized under the laws of the State of Washington, with its principal executive offices and headquarters located at 999 Lake Drive Issaquah, WA 98027. Costco also maintains corporate offices at 1701 Dallas Parkway Suite 201, Plano, TX 75093.

5. Costco is registered to do business in Texas. *See* TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/ at Filing No. 12842406 (last visited March 30, 2026).

6. Costco's registered agent in Texas is CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

## JURISDICTION AND VENUE

7. This arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because it has maintained established and regular places of business in this District and have committed acts of patent infringement in this District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

10. On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and this District, including: (A) at least part of its infringing activities alleged herein, including its registration to do business in Texas, which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this Court; and (B) regularly doing or soliciting business,

engaging in other persistent conduct targeting residents of Texas and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, affiliates, and/or consumers.

11.    Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through its inducement of third parties, and offer its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

12.    For example, Costco operates in Texas under the assumed name "Costco." *See* TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/ at Filing No. 12842406 (last visited March 30, 2026).  Costco maintains a significant business presence in Texas where it operates at least 44 Costco Warehouses.  *See* COSTCO.COM, https://www.costco.com/sitemaps/warehouses-by-state/TX.

13.    Upon information and belief and based upon public information, Defendant owns, operates, manages, conducts business, and directs and controls the operations of, and has employees that work from and out of, facilities at locations in this District, including, but not limited to, facilities at the following addresses: 1067 SH 121 Allen, TX 75013; 3800 N Central Expy, Plano, TX 75074; 1701 Dallas Pkwy, Plano, TX 75093; 11220 Dallas Pkwy, Frisco, TX 75033.  *See* COSTCO.COM, https://www.costco.com/sitemaps/warehouses-by-state/TX.

14.    Defendant is engaging in activities, including but not limited to transacting business in this District and purposefully directing its business activities, including the installation,

maintenance, and use of infringing products and other related technologies in this District, and the sale or offer for sale of services and goods in this District to aid, abet, or contribute to the infringement of third parties in this District.

15.    Defendant commits acts of infringement in this District, including, but not limited to, selling, offering for sale, and using (including through testing) the Accused Products.

16.    Defendant commits acts of induced infringement in this District, including, but not limited to inducement of infringement by its parents, subsidiaries, partners, affiliates, and end-users to use the Accused Products.

17.    Defendant commits acts of contributory infringement in this District, including, but not limited to contributing to infringement by its parents, subsidiaries, partners, affiliates, and end-users through its use of the Accused Products.

18.     Such a corporate and commercial presence by Costco furthers the development, design, manufacture, importation, distribution, and sale of Defendant's infringing products in Texas, including in this District.  Through utilization of its business segments and the direction and control of its subsidiaries and affiliates, Costco has committed acts of direct and/or indirect patent infringement within Texas, this District, and elsewhere in the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Costco would not offend traditional notions of fair play and substantial justice.

19.    On information and belief, Costco also purposefully places infringing product in Texas and this District.  For example, Costco provides its mobile application products and services, e.g., the "Costco Mobile App," for download and use in Texas.  *See* Costco.Com, https://www.costco.com/f/-/costco-app (listing available Costco Mobile App on both AppStore and Google Play) (last visited March 30, 2026).  The Costco Mobile App is available via digital

distribution platforms operated by Apple Inc., and Google.  *Id.*

20.  Based on Costco's connections and relationship with its distributors, resellers, contractors, dealers, installers, local and U.S. based national retailers, and digital distribution platforms, Costco knows that Texas is a termination point of the established distribution channel for the sale and use of Costco Mobile App to consumers in Texas.  Costco, therefore, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis.  *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 WL 1025467, at (E.D. Tex. 2009) (finding that "[a]s a result of contracting to manufacture products for sale in" national retailers' stores, the defendant "could have expected that it could be brought into court in the states where [the national retailers] are located").

21.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  As alleged herein, Costco has committed acts of infringement in this District.  As further alleged herein, Costco, via its own operations and employees located there, has a regular and established place of business, in this District.  Accordingly, Costco may be sued in this District under 28 U.S.C. § 1400(b).

## THE ACCUSED PRODUCTS

22.  Local Interest repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

23.  Costco describes its activity as a company that operates "membership warehouses and e-commerce sites based on the concept that offering low prices on a limited selection of nationally-branded and private-label products in a wide range of categories will produce high sales volumes and rapid inventory turnover."  Costco Annual Report available for download at https://investor.costco.com/financials/annual-reports-and-proxy-statements/default.aspx   (last

visited March 30, 2026).  Costco operates at least "914 warehouses worldwide: 629 in the United States (U.S.) located in 47 states, Washington, D.C., and Puerto Rico." *Id.*

24.    On information and belief, a significant portion of the operating revenue of Defendant is derived from its Costco Mobile App offered for use on iOS and Android devices ("<u>Accused Products</u>").  *See, e.g.*, **<u>Exhibits A–B</u>** (Evidence of Use Regarding Infringement of the Asserted Patents); **<u>Figures 1–2</u>** (below).

25.    For example, the Costco Mobile App has over 10 million downloads and about 394,000 reviews on Google Play:



**<u>Figure 1</u>**

26.    Similarly, the Costco Mobile App has about 1.2 million ratings on Apple's AppStore:



**Figure 2**

27.    Based upon public information, Defendant owns, operates, advertises, and/or controls at least the website https://www.costco.com/ through which it advertises, sells, offers to sell, promotes, provides and/or educates customers about Costco products, including the Accused Products. *See* COSTCO.COM, https://www.costco.com/f/-/costco-app ("Download The Costco App Today") (last visited March 30, 2026).

28.    Based upon public information, Defendant, directly and/or through its agents and intermediaries, operates, advertises, and/or controls Costco store locations throughout this District, including, at least, in Longview, McKinney, Plano, and Tyler, through which it and/or its agents or employees use, advertise, provide, and/or educate third-parties, including but not limited to customers, about the Accused Products.

## COUNT I: <u>INFRINGEMENT OF U.S. PATENT NO. 7,532,899</u>

29.     Local Interest repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

30.     The USPTO duly issued U.S. Patent No. 7,532,899 (hereinafter, the "'899 patent") on May 12, 2009, after full and fair examination of Application No. 10/984,618, which was filed on November 8, 2004.

31.     Local Interest owns all substantial rights, interest, and title in and to the '899 patent, including the sole and exclusive right to prosecute this action and enforce the '899 patent against infringers and to collect damages for all relevant times.

32.     Local Interest or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '899 patent.

33.     The claims of the '899 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of location-based services in a wireless network.

34.     The written description of the '899 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

A. THE TECHNICAL PROBLEMS IN PROVIDING LOCATION-BASED SERVICES IN A WIRELESS NETWORK IN APRIL 2004.

35.     The specification of the '899 patent provides detailed information about the problems in providing location-based services in a wireless network in April 2004.  *See* '899 patent at 1:18-49.  Goldberg Decl., ¶ 33.

36.     "Certain services, such as Maps.com, allow users to access a large database of maps and request directions or routes from a starting point to an ending point."  *Id.* at 1:43-45.  "If a user has a wireless, Internet-enabled device, such as a wireless palmtop computer, the user may then access such maps and associated directions wirelessly.  Still, there is a need for improved location-based services and systems."  *Id.* at 1:45-49; Goldberg Decl., ¶ 34.

**B. THE CLAIMED ADVANCES OF THE '899 PATENT.**

37.     The claimed invention of the '899 patent relates to "location-based services in a system for providing wireless telecommunications services to mobile devices."  '899 patent at 2:51-53. "The system uses a location determination method to determine the user's location, searches a database of Points of Interest, and determines the nearest listing in each category in the user-defined set."  *Id.* at 2:38-42.  "The database returns the name and/or other information regarding each nearest listing, and provides this information to the user's mobile device."  *Id.* at 2:42-43. "The user can click on a listing to get more detailed information, such as address, phone number (if applicable), and so forth."  *Id.* at 2:43-46.  "The user can then also view a list of the next closest points of interest in each category and so on, until there are no more listings in a given area based on a predefined search area or radius."  *Id.* at 2:46-49.  A representative system implementing the functionalities described in the claimed invention is shown in **Fig. 1** of the '899 patent, which is reproduced below:



*FIG. 1*

38.      **Fig. 1** above shows a system **100** where "a wireless device or mobile unit **102** (such as a 2.5 G GPRS-enabled mobile handset) communicates wirelessly to a 2.5 G uplink **104**." *Id.* at 3:17-21." "A typical 2.5 G uplink **104** includes multiple components not shown, such as (in order), a base transceiver station (BTS), a base station controller (BSC), and in a General Packet Radio Service (GPRS), a Gateway Serving GPRS Support Node (SGSN), a GPRS wide area network (WAN), a Gateway GPRS Support Node (GGSN), a wireless access protocol (WAP) gateway, and other components known by those skilled in the relevant art." *Id.* at 3:21-28; Goldberg Decl., ¶ 36.

39.      "Through the uplink **104** and public switched telephone network **106** the mobile unit **102** may communicate with a landline phone **108**, using known means." *Id.* at 3:37-39. "Likewise, the mobile unit can access a data network, such as the Internet **110** to access content provided by a web server **112** from a database **114**." *Id.* at 3:39-42. "While two separate networks **106** and

**110** are shown, a single network may be provided, or more than two networks provided to the mobile unit **102**.  Further, the mobile unit **102** may access numerous other services and systems via the system **100**.”  *Id.* at 3:42-46; Goldberg Decl., ¶ 37.

40.    “A location server **116** provides much of the functionality described below.  While shown as a single computer, the location server **116** may in fact be two or more computers or data processing platforms configured to provide the functionality described herein.”  *Id.* at 3:47-51. “The location server **116** communicates with a location database **110** that provides information regarding points of interest, maps, and the like.”  *Id.* at 3:51-53.  “Likewise, the location server **116** communicates with a user database **120** that stores tables (described below) regarding user preferences, and other user-specific data, often linked to the user's mobile unit **102**.”  *Id.* at 3:53-57; Goldberg Decl., ¶ 38.

41.    The claimed invention further solves problems in providing location-based services in a wireless network in April 2004 by providing a new user interface and associated functionalities related to the system described above.  Representative user interface screens for displaying information to users, with associated logic branching and functionality, are shown in Figs. 2-12 of the '899 patent.  “Indeed, FIGS. 2-12, and their associated descriptions, describe a routine for implementing the functionality described herein.”  *Id.* at 4:52-54.  “These Figures include examples of information displayed to a user (“display pages”), and examples of choices selected by the user.”  *Id.* at 4:54-56.  As just one example, **Fig. 2** is reproduced below:



*FIG. 2*

Goldberg Decl., ¶ 39.

42.    As shown above, "the server **116** provides an initial Find Things Menu to the user under block **1202**." *Id.* at 5:35-36.  "As shown, the Find Things Menu provides the user with six options: (1) Find Things Nearby, (2) My 5 Nearby, (3) Take Me Home, (4) Help, (5) Add To My mMode, and (6) Share Page." *Id.* at 5:36-39.  "The Find Things Menu provides the starting place, and initial branching, for options and functions provided to the user." *Id.* at 5:39-41.  "If the user selected either the "Find Things Nearby" or "My 5 Nearby" then in block **204**, the system **100** determines which of these two options the user selected." *Id.* at 6:1-3.  "If the user selected the 'Find Things Nearby' option, then the routine branches to provide specific options to allow the user to locate a specific thing nearby." *Id.* at 6:3-6.  "If the user did not select this option, then in block **206**, the system determines whether this is the first time the user has selected the 'My 5 Nearby' option. If so, then in block **208**, the system displays to the user an introduction page." *Id.* at 6:8-12."  "After selecting a "continue" option, or if this is not a new user, then the routine branches block **402** shown in FIG. 4." *Id.* at 6:12-14.  **Fig. 4** of the '899 patent is reproduced below:



**FIG. 4**

Goldberg Decl., ¶ 40.

43.    As just one example, "if the user selects a Find All option under block **402**, then in block **406** the system acquires the user's location and performs a POI lookup in the database **118** to identify the nearest POI for each of the POI categories defined in the selected and displayed POI set." *Id.* at 8:12-16. "If nothing is found, then in block **502** of **FIG. 5**, the system displays to the user an error message and provides additional options." *Id.* at 8:16-18. **Fig. 5** of the '899 patent is reproduced below:



**FIG. 5**

Goldberg Decl., ¶ 41.

44.    "However, if one or more POIs in the categories are found, then in block **602** of **FIG. 6**, the system displays to the user the nearest POI in each category." *Id.* at 8:18-21.  **Fig. 6** of the '899 patent is reproduced below:



**FIG. 6**

Goldberg Decl., ¶ 42.

45.    "By selecting a More [POI] option under block **604**, the user may request the system to provide additional POIs beyond the single nearest one obtained." *Id.* at 8:23-26. "As a result, the system under decision block **606** determines whether there are additional listings, and if so, obtains from the database **118** under block **608** the next POIs, or set of POIs, and displays it, or them, in a screen similar to **604** or **602**, respectively." *Id.* at 8:26-30. "The user can continue to select the next nearest location or set of locations. If no additional listings exist, then in block **610** the system indicates to the user that the last listing in the POI category has been found." *Id.* at 8:30-32; Goldberg Decl., ¶ 43.

46.    Finally, the claimed invention of the '899 patent solves problems in providing location-based services in a wireless network in April 2004 by disclosing a "table, record, or other

data structure stored in the user database **120** to assist in providing the above functionality." *Id.* at 8:36-38.  For example, **Fig. 13** of the '899 patent, shown below, provides a record **1300** that lists a user's POI set, which in this example is limited to five sets per user.  "A user-specified alphanumeric string or title defines or identifies each set. Each defined set then relates to a series of categories." *Id.* at 8:41-43; Goldberg Decl., ¶ 44.

| User's POI Sets | | 1300 |
|---|---|---|
| Set 1 | [Alphanumeric] | |
| Set 2 | [Alphanumeric] | |
| Set 3 | [Alphanumeric] | |
| Set 4 | [Alphanumeric] | |
| Set 5 | [Alphanumeric] | |
| | | |

## FIG. 13

47.    As another example, **Fig. 14** of the '899 patent, shown below, provides a record **1400** that shows five categories that relate to one of the POI sets in the record **1300**, namely Set 1.  *Id.* at 8:43-45.  "Under the record **1400**, the user identifies between one and five categories of POIs previously defined by the system." *Id.* at 8:45-47; Goldberg Decl., ¶ 45.

| POI Set 1 Categories | | 1400 |
|---|---|---|
| Category 1 | [POI Category x] | |
| Category 2 | [POI Category x] | |
| Category 3 | [POI Category x] | |
| Category 4 | [POI Category x] | |
| Category 5 | [POI Category x] | |
| | | |

## FIG. 14

48.    "**FIG. 15** shows a block diagram of a typical mobile communication device **1500** such as a mobile station, wireless device, or the mobile unit **102**." *Id.* at 8:56-58. "The mobile unit **1500** has one or more internal or external antennas **1502** for receiving and transmitting electromagnetic signals such as radio frequency signals." *Id.* at 8:58-58-61. "A transceiver **1504** is connected to the antenna **1502** and typically provides modulation and demodulation of the transmitted and received signals, respectively." *Id.* at 8:61-63. "One or more processor units **1506** connected to the transceiver **1504** may comprise a signal processor, microprocessor, ASIC, or other control and processing logic circuitry." *Id.* at 8:63-66. "The processor unit **1506** may perform signal coding, data processing, input/output processing, power control, and other functions necessary for implementing a mobile communication device." *Id.* at 8:66-67-9:1-2; Goldberg Decl., ¶ 46.

49.    "A user may provide input to the processor unit **1506** via a keypad **1508**, speaker/microphone **1510**, or display/touchpad **1512**." *Id.* at 9:3-5. "In turn, the processor **1508** may provide information to the user via the display/touchpad **1512** or speaker/microphone **1510**." *Id.* at 9:5-7. "Additionally, the processor **1506** may access information from, and store information in, a fixed memory **1514** or a removable memory **1516**." *Id.* at 9:7-9. "The fixed memory **1512** may consist of RAM, ROM, a hard disk, or other well-known memory storage technologies." *Id.* at 9:9-11. "The removable memory **1516** may consist of Subscriber Identity Module (SIM) cards that are well known in GSM communication systems or other well-known memory storage technologies." *Id.* at 9:11-14. "The mobile communication device **1500** may also include an optional GPS or other locational chipset or receiver **1518** that provides latitude and longitude information about the mobile device's **1500** current location." *Id.* at 9:14-18; Goldberg Decl., ¶ 47.

**C. THE CLAIMS OF THE '899 PATENT PROVIDE TECHNICAL SOLUTIONS TO THE PROBLEMS IN PROVIDING LOCATION-BASED SERVICES IN A WIRELESS NETWORK IN APRIL 2004.**

50.　　The '899 patent contains 35 total claims (seven independent and twenty-eight dependent).　For purposes of this complaint, the focus is on claim 4, though the same arguments (and more) apply to the other 34 claims in the patent.　This complaint uses bolding and italics for emphasis, as shown below, to highlight the limitations that are directed to solving then existing problems.　Claim 4 is immediately below:

> *4. A method for providing wireless telecommunication services* to mobile devices, the method comprising:
>
> *receiving a command from a user's mobile device* to locate points of interest near to a location of the user's mobile device, wherein each of the points of interest are associated with one of two or more *different and user-identified point of interest categories*;
>
> *automatically determining the location of the user's mobile device*;
>
> *based at least in part on the determined location, automatically providing to the user's mobile device a list of points of interest*, wherein the list substantially simultaneously presents at least one point of interest for at least some of the different and user-identified point of interest categories, and wherein the list of points of interest represent points of interest that are *geographically closest to the location of the user's mobile device*;
>
> *receiving input from the user's mobile device*; and
>
> *providing a next-closer list of points of interest*, wherein the next closer list substantially simultaneously presents at least one point of interest for at least some of the different and user-identified point of interest categories that are *geographically next closest to the location of the user's mobile device* than points of interest in the list of points of interest.

The '899 patent, claim 4 (emphasis added).

51.　　Other independent claims　(claims 1, 5, 14, 21, 27, and 31) are also directed to subject

matter that provided technical solutions to technical problems that existed in April 2004.  While claim 5 provides a different method for providing wireless telecommunication services to mobile devices that would result a more limited number of outcomes comparing to claim 4, most of these independent claims are directed to systems, apparatuses, and computer-readable mediums for providing to a user location-based services.  *See* '899 patent at claim 1 (disclosing a system for providing  telecommunication services between multiple mobile devices and multiple network access points); claim 14 (disclosing a computer-readable medium whose contents cause at least one telecommunication server to perform a method to provide location-based services to at least one telecommunications mobile device); claim 21 (disclosing a wireless telecommunications apparatus for providing to a user location-based services); claim 27 (disclosing a computer-readable medium whose contents store instructions for at least one telecommunications server to execute a method, wherein the telecommunications server provides, or is coupled to a system that provides, location-based services to at least one telecommunication mobile device associated with a subscriber); claim 31 (disclosing a computer-readable medium containing a data structure for use by a wireless system that provides communication between a wireless device and multiple network access points).  Goldberg Decl., ¶ 49.

52.     The dependent claims address other inventive aspects of the claimed invention, including: (1) options such as calling a phone number associated with a selected point of interest or receiving directions to a selected point of interest is provided to the user (claim 2, compare with claim 6); (2) permitting the user to rename, add, or delete any the user-defined set and modify at least one of the point of interest categories (claim 3); (3) including various categories of points of interest (claims 7-9, compare with claims 22-23, 29-30, and 34-35);  (4) providing an audio, visual, or multimedia message associated with at least one of the points of interest (claim 12); (5) various

versions and/or configurations of the computer-readable medium (claims 15-20); (6) additional limitations related to input/output means, memory means, and location determining means (claims 24-26) and (7) additional limitations related to how first and second data structures are stored (claims 32-33).  Goldberg Decl., ¶ 50.

53.    To a person of ordinary skill in the art ("POSITA"), these claims are directed to much more than any abstract ideas, and they certainly do not contain instructions to perform an abstract idea through the use of well-known computer and wireless technologies without describing an improvement to those technologies.  The claims of the '899 patent are generally directed to a specific configuration of software and hardware in order to provide an improved location-based services.  Specifically, as explained in the specification, the Figures, as well as the claim language, the claimed invention achieves this particular configuration by using a unique system, a particular routine that consists of a particular set of logic branching and functionalities, and data structures. Goldberg Decl., ¶ 51.

54.    The claims of the '899 patent, including claim 4, are directed to a technical solution to technical problems that existed in April 2004.  More specifically, the claimed subject matter overcame the technical problems with location-based services and systems that existed in April 2004.  *See supra* at ¶¶ 34-48; Goldberg Decl., ¶ 52.

55.    A POSITA would understand that each of the claims above provided a specific improvement in location-based services and systems that did not exist prior to the priority date of the '899 patent, and more specifically, resulted in a device based on computer technology that improved a user's experience in locating points of interest based on the user's location using mobile devices.  Goldberg Decl., ¶ 53.

56.    Additionally, these claims are not directed at subject matter that can be performed by

a human, mentally or with pen and paper.  The claims of the '899 patent, including Claim 4, are directed to a specific configuration of hardware capable of performing certain functions; in general, the claims cannot be performed by a human or by pen and paper, and can only be performed by a computer and, in this case, a computer in a specialized, distinct configuration. Goldberg Decl., ¶ 54.

57.    In addition, the '899 patent's specification identifies specific processes used for performing the claimed method.  For example, **Figs. 4** and **6** and the underlying descriptions of these steps define specific algorithms and/or steps for performing the individual claim limitations. Goldberg Decl., ¶ 55.



*FIG. 4*



**FIG. 6**

58.    The sequence of steps in Figs. 4 and 6 can then be mapped directly to specific claim limitations as shown below:

4. A method for providing wireless telecommunication services to mobile devices, the method comprising:

[**Fig. 4**: 402]
**receiving a command from a user's mobile device to locate points of interest near to a location of the user's mobile device**, wherein each of the points of interest are associated with **one of two or more different and user-identified point of interest categories**;

[**Fig. 4**: 406]
**automatically determining the location** of the user's mobile device;

[**Fig. 6**: 602]
**based at least in part on the determined location**, automatically providing to the user's mobile device **a list of points of interest**, wherein the list substantially simultaneously presents at least one point of interest for at least some of the different and user-identified point of interest categories, and wherein the list of points of interest represent points of interest that a**re geographically closest to the location of the user's mobile device**;

[**Fig. 6**: 602, 604]

---

**COMPLAINT FOR PATENT INFRINGEMENT**
E.D. Tex. No. 2:26-cv-00265 - Page | 22

**receiving input** from the user's mobile device; and

[**Fig. 6**: 606, 608]
**providing a next-closer list of points of interest**, wherein the next closer list substantially simultaneously presents at least one point of interest for at least some of the different and user-identified point of interest categories that are **geographically next closest to the location of the user's mobile device** than points of interest in the list of points of interest.

59.     The result of these specific methods is that the system requires specialized software to execute.  Specialized software indicates that the method cannot be performed simply by a general-purpose computer.  In addition, the techniques detailed in the specification for performing the claim limitations provide specific improvements to the technology.  Goldberg Decl., ¶ 57.

60.     Finally, because of this specificity, the claims of the '899 patent do not preempt all the ways of providing location-based services in a wireless network.  There are a variety of other ways such systems could be architected, such as the prior art patents and applications identified on the face of the patent, which would not be preempted.  *See* '899 patent at 1-2, References Cited (disclosing the proposed prior art patents and patent applications cited by the examiner and/or referenced by the patentee during prosecution of the '899 patent).  Goldberg Decl., ¶ 58.

61.     Even if the '899 patent claims were directed at an abstract idea (which they are not), the claims capture subject matter that is inventive.  To the extent that the claims employ components and technology that existed at the time, they are employed together here in a way that was new (and certainly would not have been considered conventional, routine, or generic to those skilled in the art).  The use of this particular combination of hardware and software components in this way to provide location-based services in a wireless network, as claimed in the various forms in the claims highlighted above, is inventive.  Goldberg Decl., ¶ 59.

62.     Even if that were not true, the ordered combination of limitations in claim 4 of the '899 patent, as recited and described in detail above, were not well-known in the art.  A POSITA

would not have been aware of any art or system that existed at the time and that disclosed all of these limitations in a way that solved the then-existing problems with providing location-based services in a wireless network.  A POSITA would have understood that these claims do not merely employ generic components in a conventional or routine way.  These claims are directed to specific solutions using technology in an inventive and unique way to solve the well-documented problems that were then-known in the art.  Goldberg Decl., ¶ 60.

63.    For the above reasons, the claims of the '899 patent claim a combination of elements sufficient to ensure that the claims themselves, both in substance and in practice, are directed to concrete and inventive concepts (not an abstract idea).  Goldberg Decl., ¶ 61.

### Infringement of the '899 Patent

64.    Defendant has directly infringed the claims of the '899 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

65.    Defendant has directly infringed and continue to infringe, either literally or under the doctrine of equivalents, at least claim 4 of the '899 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,532,899).

66.    As just one example, as detailed in Exhibit A, Defendant, using the Accused Products and associated hardware and software and functionalities, performs a method for providing wireless telecommunication services to mobile devices, the method comprising: receiving a command from a user's mobile device to locate points of interest near to a location of the user's mobile device, wherein each of the points of interest are associated with one of two or more different and user-identified point of interest categories; automatically determining the location of the user's mobile device; based at least in part on the determined location, automatically providing

to the user's mobile device a list of points of interest, wherein the list substantially simultaneously presents at least one point of interest for at least some of the different and user-identified point of interest categories, and wherein the list of points of interest represent points of interest that are geographically closest to the location of the user's mobile device; receiving input from the user's mobile device; and providing a next-closer list of points of interest, wherein the next-closer list substantially simultaneously presents at least one point of interest for at least some of the different and user-identified point of interest categories that are geographically next closest to the location of the user's mobile device than points of interest in the list of points of interest.

67.    Defendant had knowledge of the '899 patent at least as of the date when it was notified of the filing of this action.

68.    Since gaining knowledge of the '899 patent, Defendant has also indirectly infringed one or more claims of the '899 patent by inducing others to directly infringe said claims. *See, e.g.*, Ex. A; Costco.com, https://www.costco.com/.

69.    Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, contractors, customers, and/or potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '899 patent by providing or requiring use of the Accused Products.

70.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '899 patent, including, for example, claim 4 of the '899 patent.

71.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing

instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on its website on how to use the Accused Products in an infringing manner.

72.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '899 patent and with the knowledge that the induced acts constitute infringement.

73.    Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '899 patent.

74.    Defendant's inducement is ongoing.    *See, e.g.*, Ex. A; COSTCO.COM, https://www.costco.com/.

75.    Since gaining knowledge of the '899 patent, Defendant has also indirectly infringed by contributing to the infringement of the '899 patent.

76.    Defendant has contributed to the direct infringement of the '899 patent by its personnel, contractors, and customers.

77.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '899 patent, including, for example, claim 4 of the '899 patent.

78.    The special features constitute a material part of the invention of one or more of the claims of the '899 patent and are not staple articles of commerce suitable for substantial non-infringing use.

79.    Defendant's contributory infringement is ongoing.    *See, e.g.*, Ex. A; COSTCO.COM, https://www.costco.com/.

80.    Since gaining knowledge of the '899 patent, Defendant's direct infringement of one

or more claims of the '899 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Local Interest's rights under the patent.

81.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Local Interest's patent rights.

82.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

83.    Local Interest has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Local Interest has and will continue to suffer this harm by virtue of Defendant's infringement of the '899 patent.  Defendant's actions have interfered with and will interfere with Local Interest's ability to license technology.  The balance of hardships favors Local Interest's ability to commercialize its own ideas and technology.  The public interest in allowing Local Interest to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

84.    Local Interest has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Local Interest in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: <u>INFRINGEMENT OF U.S. PATENT NO. 8,774,834</u>

85.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

86.     The USPTO duly issued U.S. Patent No. 8,774,834 (hereinafter, the "'834 patent") on July 8, 2014, after full and fair examination of Application No. 13/690,704, which was filed on November 30, 2012.

87.     Local Interest owns all substantial rights, interest, and title in and to the '834 patent, including the sole and exclusive right to prosecute this action and enforce the '834 patent against infringers and to collect damages for all relevant times.

88.     Local Interest or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '834 patent.

89.     The claims of the '834 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of location-based services in a wireless network.

90.     The written description of the '834 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

91.     Defendant has directly infringed the claims of the '834 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

92.     For example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '834 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,774,834).

93.     As just one example of infringement, as detailed in Exhibit B, the Accused Products perform a  method for providing wireless telecommunication services, the method comprising: receiving, from a mobile device, a request to identify points of interest near a location of the mobile device, wherein the request comprises a plurality of letters; determining the location of the mobile device; determining a point of interest having a name comprising a first portion, the first portion comprising the plurality of letters; transmitting the name of the point of interest to the mobile device; receiving, from the mobile device, an indication of a selection of the name of the point of interest; determining point of interest data associated with the point of interest; and transmitting the point of interest data associated with the point of interest to the mobile device.

94.     Local Interest has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Local Interest in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### JURY DEMAND

95.     Local Interest hereby requests a trial by jury on all issues so triable by right.

### PRAYER FOR RELIEF

96.     Local Interest requests that the Court find in its favor and against Defendant, and that the Court grant Local Interest the following relief:

a.     Judgment that one or more claims of the Asserted Patents have been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert

therewith;

b.   A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '899 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patent by such entities;

c.   Judgment that Defendant account for and pay to Local Interest all damages to and costs incurred by Local Interest because of Defendant's infringement of the Asserted Patents and other conduct complained of herein;

d.   Judgment that Defendant's infringements be found willful as to the '899 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award Local Interest its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>March 31, 2026</u>

Respectfully submitted,

By:<u>/s/ C. Matthew Rozier</u>

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (737) 295-0876
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*Attorneys for Plaintiff* LOCAL INTEREST, *LLC*

\* Admitted to the Eastern District of Texas

**List of Exhibits**

    A.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,532,899

    B.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,774,834